IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CRAIG RAPACKI,

        Plaintiff,

    v.                                    No.  3:11-cv-185-HZ

CHASE HOME FINANCE LLC, a
Delaware Limited Liability Corporation,
NORTHWEST TRUSTEE SERVICES,           OPINION & ORDER
INC., a Washington corporation, and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION, a Delaware Corporation,

        Defendants.


Terrance J. Slominski
David W. Venables
7150 S.W. Hampton, Suite 201
Tigard, Oregon 97223

     Attorneys for Plaintiff

Michael J. Farrell
Stephen P. Yoshida
MARTIN BISCHOFF TEMPLETON LANGSLET & HOFFMAN LLP
888 S.W. Fifth Avenue, Suite 900
Portland, Oregon 97204

   Attorney for Defendants Chase Home Finance LLC and
     Federal National Mortgage Association

HERNANDEZ, District Judge:

   Plaintiff Craig Rapacki brings this foreclosure-related action against defendants Chase

Home Finance, LLC (Chase), Northwest Trustee Services (NWTS), and the Federal National

Mortgage Association (FNMA).  Plaintiff brings a breach of contract claim against Chase, and a

"wrongful foreclosure" claim against all defendants.  I dismissed the claim against NWTS in a

June 21, 2011 Opinion & Order.  (Dkt #30).  A Stipulated Judgment of Dismissal as to NWTS

was filed on August 12, 2011.  (Dkt #37).

   Defendants Chase and FNMA move for summary judgment.  I grant the motion in part

and deny it in part.

BACKGROUND

   On October 2, 2003, plaintiff borrowed $200,000 from lender Mortgage Market, Inc.,

executing a promissory note in favor of Mortgage Market.  See Ex. 1 to Slominski Decl. at p. 2

(Deed of Trust, referring to promissory note).   The note was secured by a Deed of Trust (DOT)

against real property in Estacada, Oregon.  Ex. 1 to Slominski Decl.  The DOT identifies plaintiff

and his late wife as the borrowers, Mortgage Market as the lender, and Pacific Northwest Title of

Oregon, Inc., as the trustee.  Id. at p. 1.  It also identifies the Mortgage Electronic Registration

Systems, Inc. (MERS) as the "beneficiary under this Security Instrument." Id. at p. 2.  "Security

Instrument" is defined as "this document," meaning the DOT.  Id. at p. 1.  The DOT also states

that MERS "is acting solely as a nominee for Lender and Lender's successors and assigns."  Id. at

p. 2.

On December 1, 2006, MERS, as beneficiary of the DOT, assigned its interest in the

DOT to Chase.  Ex. 1 to Yoshida Decl. at p. 1.  This assignment was recorded in Clackamas

County on December 6, 2006.  Id.  On December 5, 2006, Chase appointed NWTS as the

successor trustee.  Ex. 2 to Yoshida Decl.  This appointment was recorded in Clackamas County

on December 6, 2006.  Id.

In March 2009, NWTS generated a Notice of Default and Election to Sell (NODES) and

sent it to plaintiff.  Ex. 3 to Yoshida Decl. at pp. 1-12.  The NODES was recorded in Clackamas

County on July 16, 2009.  Id.  The NODES indicates that as of March 24, 2009, plaintiff owed

$14,078.40 on the note.  Id. at p. 3.  It states that the foreclosure sale would occur on July 27,

2009.  Id.  Nothing in the record explains why the sale did not occur on that date.

During the summer of 2009, plaintiff applied for a loan modification through Chase.  Pl.'s

Decl. at ¶ 2.  On August 24, 2009, plaintiff had a telephone conversation with a Chase employee

during which, according to plaintiff, Chase told him he had been approved for a "HAMP" trial

period, that the first payment would be due in September in the amount of $930, and that the

paperwork would be mailed to him.  Id. at ¶ 3.  Plaintiff received the paperwork in early

September, signed the agreement, and mailed it, along with a $930 cashier's check, back to

Chase.  Id. at ¶ 4.

Despite the fact that a Chase representative spoke to plaintiff on August 24, 2009, and

that, according to plaintiff, the loan modification documents were being sent to plaintiff, the

3 - OPINION & ORDER

property was sold at a foreclosure sale on August 27, 2009.  Ex. 8 to Slominski Decl. (Log Notes identified with Bates Stamp as "CHASE-0099" stating property sold to beneficiary on August 27, 2009, for $217,147.87").

Additional facts are recited below.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial."  Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted).  The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.  Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material.  Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009).  The court views inferences drawn from the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material

issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

Plaintiff's breach of contract claim has two bases:  (1) Chase breached the DOT by violating several statutory requirements of the Oregon Trust Deed Act, Oregon Revised Statutes §§ (O.R.S.) 86.705 - 86.795 (OTDA); and (2) Chase breached the DOT by foreclosing in the middle of the modification process because plaintiff was not in default at that time.  Compl. at ¶ 20.

In support of the wrongful foreclosure claim, plaintiff alleges six separate reasons why the foreclosure was improper:  (1) the mortgage is not a DOT in compliance with the OTDA and may not be non-judicially foreclosed because it names MERS as a beneficiary in addition to the lender who was the facial and factual beneficiary under the loan secured by the mortgage; (2) Chase was not the beneficiary at the time it recorded the appointment of the successor trustee and consequently, NWTS's actions in foreclosing were invalid; (3) there were unrecorded assignments of beneficial interest at the time of the sale; (4) because plaintiff was in a loan modification, no present default existed and thus, foreclosure was not authorized by the DOT; (5) MERS's assignment of the DOT to Chase assigned only MERS's interest in the DOT which was solely a nominee's interest and consequently, Chase lacked authority to appoint a successor trustee or take other actions on its own behalf; and (6) FNMA never paid the $217,147.87 that was stated consideration in the Trustee's Deed.  Compl. at ¶ 25A-F.

/ / /

5 - OPINION & ORDER

I.  The Tort Claim

In the June 21, 2011 Opinion & Order granting NWTS's motion to dismiss, I concluded that Oregon did not recognize a wrongful foreclosure tort claim.  As I explained in the prior Opinion, Harper v. Interstate Brewery Co., 168 Or. 26, 120 P.2d 757 (1942), is the only case suggesting the existence of a tort claim for wrongful foreclosure.  June 21, 2011 Op. at pp. 8, 11. And, as discussed in the prior Opinion, cases after Harper have explained that Harper actually addresses the implied covenant or duty of good faith and fair dealing, a claim based in contract not in tort.  Id.  Here, because there is no contractual relationship between FNMA and plaintiff, there can be no implied duty claim against FNMA.  The existence of an implied duty of good faith and fair dealing claim against Chase is discussed below.

There is also no basis for a claim for tortious breach of the duty of good faith and fair dealing.

> Oregon also recognizes a claim for tortious breach of the duty of good
> faith and fair dealing, but only where the parties are in a "special relationship."
> Bennett v. Farmers Ins. Co., 332 Or. 138, 160, 26 P.3d 785, 799 (2001).  A special
> relationship exists where "one party has authorized the other to exercise
> independent judgment in his or her behalf and, consequently, the party who owes
> the duty has a special responsibility to administer, oversee, or otherwise take care
> of certain affairs belonging to the other party."  Conway v. Pacific Univ., 324 Or.
> 231, 241, 924 P.2d 818, 824 (1996).

Confederated Tribes of Warm Springs Reservation of Or. v. Ambac Assur. Corp., No. CV-10–130–KI, 2010 WL 4875657, at *3 (D. Or. Nov. 17, 2010); see also Schukart v. State Farm Mut. Auto. Ins. Co., No. CV-04-6242-AA, 2006 WL 456260, at *4 (D. Or. Feb. 22, 2006) (noting that physician-patient, lawyer-client, architect-client, insurer-insured, and agent-principal relationships may be those recognized as "special" because one party's interests are controlled by

6 - OPINION & ORDER

another).

Arms-length relationships between a bank and a customer or between a borrower and a creditor do not support a tortious breach of duty claim.  Uptown Heights Assocs. Ltd. P'Ship v. Seafirst Corp., 320 Or. 638, 648-50, 891 P.2d 639, 645-46 (1995).  Thus, plaintiff fails to establish a tortious breach of the duty of good faith and fair dealing claim against Chase and FNMA.

Finally, I reject plaintiff's argument that violations of the OTDA are "statutory torts," entitling plaintiff to tort damages.  In McAlpine v. Multnomah County, 131 Or. App. 136, 883 P.2d 869 (1994), the Oregon Court of Appeals articulated a four-part test to determine the existence of a statutory tort:  (1) defendants violated a statute; (2) plaintiff was injured as a result of that violation; (3) plaintiff was a member of the class of persons meant to be protected by the statute; and (4) the injury plaintiff suffered is of a type that the statute was enacted to prevent.  Id. at 144, 83 P.2d at 873.

Here, applying the test and assuming arguendo the truth of plaintiff's allegations, there is no statutory tort because the tort-based injuries plaintiff alleges in this case (emotional distress, reputation damages, and punitive damages), are not the type that the OTDA was enacted to prevent.  The OTDA

> represents a well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor. [The OTDA] confers upon a trustee the power to sell property securing an obligation under a trust deed in the event of default, without the necessity of judicial action. However, the trustee's power of sale is subject to strict statutory rules designed to protect the grantor, including provisions relating to notice and reinstatement.

Staffordshire Inv., Inc. v. Cal–Western Reconveyance Corp., 209 Or. App. 528, 542, 149 P.3d

150, 157 (2006).  The OTDA codifies a contractual relationship and provides a specified process

of non-judicial foreclosure which benefits creditors and protects borrowers in real property

transactions.  Nothing in the OTDA suggests that anything other than contractual damages

related to the property are recoverable.

        I grant summary judgment to defendants on plaintiff's "wrongful foreclosure" tort claim.

II.  Contract Claim

        This claim is brought against Chase only, and as noted above, is based on violations of

the OTDA as well as plaintiff's allegation that there was no default at the time of the foreclosure.

Compl. at ¶ 20.

        A.  OTDA

        Plaintiff contends that Chase violated the OTDA in several ways and as a result, violated

the DOT.  Plaintiff fails to create an issue of fact as to the allegation that Chase's appointment of

NWTS as successor trustee was invalid.  On December 5, 2006, Chase Home Finance, LLC

appointed NWTS as successor trustee under the DOT.  Ex. 2 to Yoshida Decl.  The appointment

was signed by Becky Baker as "Attorney-in-Fact" for Chase Home Finance LLC.  Id.

        Previously, on August 15, 2003, Becky Baker was appointed an "Attorney-in-Fact" and

granted a limited power of attorney by Chase Manhattan Mortgage Company.  Ex. 5 to Slominski

Decl.  Plaintiff argues that because Baker was appointed by Chase Manhattan Mortgage

Company, she had no authority to act as an "Attorney-in-Fact" three years later for Chase Home

Finance, LLC.

        The record shows, however, that Chase Home Finance, LLC was the successor by merger

8 - OPINION & ORDER

to Chase Manhattan Mortgage Corporation.  Reardon Decl. No. 2 at ¶ 5.  On January 1, 2005, Chase Home Finance, LLC, a Delaware limited liability company, merged with Chase Manhattan Mortgage Corporation, a New Jersey corporation.  Id.; see also Ex. A to Reardon Decl. No. 2 (Certificate of Merger between Chase Manhattan Mortgage Corporation and Chase Home Finance, LLC).  All loans, assets, contract rights, liabilities, etc. in the name of Chase Manhattan Mortgage Corporation were transferred to Chase Home Finance, LLC on January 1, 2005.  Id. There is no factual support for plaintiff's allegation that Baker, acting on behalf of Chase Home Finance, LLC, lacked authority to appoint NWTS as successor trustee.

Plaintiff also fails to create an issue of fact as to the allegation that FNMA did not pay the amount stated in the Trustee's Deed.  Defendants' evidence establishes that at the time of the foreclosure, Chase was the recorded beneficiary in the DOT.  Reardon No. 1 Decl. at ¶ 5.  FNMA was an investor in the loan at the time, but had no beneficial interest in the DOT.  Id. at ¶ 6. Chase gave bidding instructions to NWTS for the sale.  Id. at ¶ 7.  Under those instructions, NWTS bid a "credit bid" on Chase's behalf in the sum of $217,147.87.  Id.  Under Chase's instructions, the foreclosure was in the name of the trust deed beneficiary.  Id. at ¶ 8.  However, following Chase's instructions, NWTS immediately deeded the property to FNMA because FNMA was an investor on the note.  Id. at ¶ 9.  Thus, FNMA was listed on the Trustee's Deed as the foreclosure purchaser.  Id.  With these undisputed facts, plaintiff cannot succeed on his allegation regarding the purchase of the property at the sale.

Plaintiff's other alleged OTDA violations involve the role of MERS.  I have previously concluded that naming MERS as a beneficiary in a DOT does not violate the OTDA.  Richard v. Deutsche Bank Nat. Trust Co., No. 3:09–cv-123–AC, 2011 WL 2650735, at *3 (D. Or. July 6,

2011) ("Because the trust deed in the present case explicitly names MERS as a beneficiary and specifically gives it the right to foreclose on Plaintiff's property, I find no error in the Magistrate Judge's findings [that the deed of trust authorized MERS to act as a beneficiary].").  Although some Judges in this District have since reached the opposite conclusion, e.g., James v. ReconTrust Co., No. 3:11-cv-324-ST, 2012 WL 653871 (D. Or. Feb. 29, 2012); Hooker v. N.W. Trustee Servs., Inc., No. 1:10-cv-3111-PA, 2011 WL 2119103 (D. Or. May 25, 2011), I adhere to my previous conclusion.  See Sovereign v. Deutsche Bank, No. 3:11–cv–995–BR, 2012 WL 724796, at *8 (D. Or. Mar. 5, 2012) (acknowledging Judge Simon's Opinion in James, but adhering to conclusion reached in Reeves v. ReconTrust Co, N.A., No. 3:11–cv–1278–BR, 2012 WL 652681 (D. Or. Feb. 28, 2012) that recognized MERS as a valid beneficiary under Oregon law).

I grant Chase's motion for summary judgment on the contract claim to the extent it is based on alleged violations of the OTDA.

B.  Default

Plaintiff and Chase agree that they had a telephone conversation on August 24, 2009. Plaintiff states that he was told he had been approved for a "HAMP trial period," that his first payment would be due in September in the amount of $930, and that the paperwork would be mailed to him.[1]  Despite expressly admitting in its Answer to plaintiff's Complaint that plaintiff entered into a trial modification plan on or about September 1, 2009, and that pursuant to the

---

[1]  The Home Affordable Mortgage Program (HAMP), 12 U.S.C. § 5219a, "is a federal program whereby the United States government privately contracts with banks to provide incentives to enter into residential mortgage modifications."  Nevada v. Bank of Am. Corp., No. 12–15005, --- F.3d ----, 2012 WL 688552, at *2 n.1 (9th Cir. Mar. 2, 2012).

terms of the trial modification plan, plaintiff was to make his first scheduled payment in the sum of $930 on September 1, 2009, Ans. at ¶ 14, Chase stated, in response to plaintiff's Requests for Admission, that it lacked complete information as to the "full content" of the August 24, 2009 phone conversation.  Ex. 2 to Slominski Decl. (Chase's Resp. to Pl.'s RFA No. 6).

Chase's "Consolidated Notes Log" show several entries dated August 24, 2009.  Ex. 6 to Slominski Decl.  Because Chase fails to provide any interpretation of what the log notes show, I have interpreted them to the extent possible based on my familiarity with the case and commonsense.  One of the log notes acknowledges that the loan "IS ACTIVE IN FCL" and the "FCL SCHEDULED SALE DATE IS 08/27/2009."  Id. at Bates No. CHASE - 0079.  Another states "ADVD CANNOT COMMIT TO PAY," id., suggesting, perhaps, that Chase could not commit to a modification agreement.  But, that same note states that Chase was "GATHERING DETAILS ON RFD & FNCLS TO FURTHER RVW SITUATION. INC LOWER B/C BUS SLOW,.  FIRST TIME VERBAL FINANCIALS TAKEN IN ER."  Id.  This note suggests that despite the fact that the property was in "active foreclosure," some negotiation about a modification occurred during the conversation.

Additionally, while another note states that "REPAY NOT FEAS BASED ON INV/BUS GUIDELINES DUE TO FORECLOSURE STATUS," and that the loan was referred to "HAD DEPT. MOD," another note states that plaintiff was informed that the modification terms were not final and that they may vary "UPN RVW OF PKG."  Id. at Bates No. CHASE - 0078.  Thus, Chase was obviously offering plaintiff some kind of modification, while advising plaintiff that the initially proposed terms could change upon further review.  Most telling, however, is the log note that states "QUALIFIED, SUBMITTED FOR APPROVAL . . . $930.00 09/01/09-11/01/09

11 - OPINION & ORDER

ADV TO SIGN DOCS AND RET."  Id.  Subsequent notes refer to the payment schedule, with

the last of those stating "CHANG PLAN 01:  03 PYMTS, TOT 2790.00, END 11/01/09."  Id. at

Bates No. CHASE - 0077.

Although Chase insisted at oral argument that the log notes support its position that there

was only a discussion concerning a modification agreement and that plaintiff was told that he

was not pre-qualified and not approved, the log notes, read in a light most favorable to plaintiff,

show the opposite.  While acknowledging that the property was in foreclosure proceedings, the

notes still show that Chase was "gathering details" on "financials" and in the end, told plaintiff

that he was qualified and that his trial modification had been submitted for approval.  Read in a

light most favorable to plaintiff, the notes confirming the payment schedule establish that Chase

had agreed to the trial modification. The notes referring to a further review likely refer to the

long-term modification agreement following the trial plan's three-month period.

According to plaintiff, he received paperwork from Chase for the HAMP trial period in

early September 2009.  Pl.'s Decl. at ¶ 3.  The paperwork is a three-page form which states at the

top:  "HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN."  Ex. 5 to Yoshida

Decl.  Immediately below, it states:  "(Step One of Two-Step Documentation Process)."  Id.  It

lists the trial period plan effective date as September 1, 2009.  Id.  The first paragraph states:

> If I am in compliance with this Trial Period Plan (the "Plan") and my
> representations in Section 1 continue to be true in all material respects, then the
> Lender will provide me with a Home Affordable Modification Agreement
> ("Modification Agreement") as set forth in Section 3, that would amend and
> supplement (1) the Mortgage on the Property, and (2) the Note secured by the
> Mortgage.

Id.[2]

The document then states:  "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer.  This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature."  Id.

The document also expressly states that in Oregon, during the "Trial Period," defined as the period commencing on the Trial Period Effective Date (which, as above, was September 1, 2009), and continuing to the first day of the month following the month in which the last trial period payment is due, the lender will suspend any scheduled foreclosure sale, provided the borrower continues to meet the obligations under the Plan, but any pending foreclosure will not be dismissed and may be resumed if the Plan terminates.  Id. at p. 2.

As stated above, plaintiff signed the document and sent it in, along with a $930 cashier's check.  Id.; Pl.'s Decl. at ¶ 4.  The date on the document next to plaintiff's signature is September 4, 2009.  Ex. 5 to Yoshida Decl.

To properly state a claim for breach of contract under Oregon law, plaintiff must establish

---

[2]  Chase argues that any trial modification agreement is invalid because plaintiff materially misrepresented that he lived on the property at the time.  One of the representations in Section 1 is that the borrower lives in the property as his or her primary residence.  Ex. 5 to Yoshida Decl. at p. 1.  Chase refers to plaintiff's response to an interrogatory in which plaintiff apparently stated that he lived in Tennessee.  Because the interrogatory response is not in the record, I do not consider this argument.  Moreover, plaintiff states in his declaration that he lived on the property at the time he signed the paperwork, but that soon after, he relocated to Tennessee to pursue work options.  Pl.'s Decl. at ¶ 5.  He states that he intended to keep his property in Oregon as his principal residence while he looked for work in Tennessee.  Id.  Thus, on summary judgment, Chase's "material misrepresentation" argument is unavailing.

(1) the existence of a contract; (2) the relevant terms of the contract; (3) plaintiff's full

performance and lack of breach; and (4) defendant's breach resulting in damage to plaintiffs.

Olmstead v. ReconTrust Co., N.A., No. 3:11-cv-964-HA, 2012 WL 442225, at *3 (D. Or. Feb. 9,

2012) (citing Slover v. Or. State Bd. of Clinical Social Workers, 144 Or. App. 565, 570 927 P.2d

1098, 1101–02 (1996)).

Chase argues that it is entitled to summary judgment on the contract claim because the

record shows that Chase never assented to the formation of a binding loan modification

agreement, that to the extent there was a loan modification agreement it is void under the statute

of frauds because Chase did not sign it, and finally, because even if a binding modification

agreement was formed, plaintiff suffered no compensable damages because the loss of the house

and the personal property occurred before the modification contract was formed or breached.

As noted above, the call notes, when interpreted in plaintiff's favor create an issue of fact

as to whether a trial modification plan agreement was formed during the August 24, 2009 phone

conversation plaintiff had with Chase.  This disposes of the first and third of Chase's arguments.

The record is clear, however, that as of the date of the foreclosure, August 27, 2009, the

modification agreement was an oral one.  Plaintiff himself did not sign the paperwork until

September 4, 2009, and there is no evidence that Chase ever signed the agreement.[3]  I agree with

Chase that the August 24, 2009 oral modification of the DOT is unenforceable under the statute

of frauds.

Under O.R.S. 41.580, several types of agreements, including agreements for the sale of

---

[3]  Stating the obvious, by the time Chase received the paperwork from plaintiff, there was
no point in Chase signing the agreement as the foreclosure had already occurred.

real property, must be in writing and be "subscribed by the party to be charged." O.R.S.

41.580(1)(e). Agreements subject to the statute of frauds may be modified only by a written

agreement if the agreement as modified would also fall within the statute of frauds. See, e.g.,

Wash. Square, Inc. v. First Lady Beauty Salons, Inc., 290 Or. 753, 761, 625 P.2d 1311, 1316

(1981) ("A lease required by the statute of frauds to be in writing may be modified only by an

agreement also in writing if the lease as modified would itself be within the statute of frauds").

     Here, the DOT is an agreement regarding the sale of real property and thus was required

to be in writing. The modification agreement changed only the amount of the monthly payment,

for only three months, and did not alter the fact that the agreement still related to the sale of real

property. Thus, because the DOT as modified would still come within the statute of frauds, the

modification had to be writing and be subscribed by the party to be charged to be effective.

Accordingly, while the record, interpreted in a light most favorable to plaintiff, shows that an oral

trial period modification agreement was reached on August 24, 2009, it cannot bind Chase

because the statute of frauds requires that it be in writing and be signed by Chase.[4]

---

[4] Two other subsections of O.R.S. 41.580(1) require mentioning. Under O.R.S.
41.580(1)(a), an agreement that by its terms is not to be performed within a year from the making
must be in writing and be subscribed by the party to be charged. Plaintiff contends that because
the trial modification agreement was to last only three months, it did not require a writing under
O.R.S. 41.580(1)(a). I disagree because the trial modification agreement modified the DOT and,
even as modified, the DOT still required payments for many years. The only change necessitated
by the trial modification agreement was the amount to be paid for three months in the fall of
2009. It did not modify the length of time payments were required under the DOT. Thus, even if
O.R.S. 41.580(1)(a) were the controlling statute of frauds provision, the modification was
required to be in writing.
    Additionally, plaintiff relies on O.R.S. 41.580(1)(h) which generally requires an
agreement to lend money or to otherwise extend credit, or an agreement to modify the terms
under which the person has lent money or otherwise extended credit, to be in writing, unless the
loan of money or extension of credit is to a natural person and is secured solely by residential
property. Plaintiff argues that because the DOT and the promissory note together comprise an

The problem for Chase, however, is that it created the conditions preventing the oral agreement from being reduced to writing because Chase, knowing that the foreclosure was scheduled for August 27, 2009, told plaintiff on August 24, 2009, that he qualified for the trial modification and went ahead and sent him the documents to memorialize the trial modification agreement. At oral argument, Chase implied that plaintiff was somehow at fault for waiting until three days before the foreclosure sale to discuss a modification with Chase. First, there is nothing in the record to suggest one way or the other that the conversation on August 24, 2009, was plaintiff's first attempt to talk to Chase. Second, and more importantly, if three days before a scheduled foreclosure is too late to enter into a trial modification plan, why did Chase go ahead and tell plaintiff he was qualified for that plan and then send him the modification paperwork which would not be received before the foreclosure sale? Chase wants to have its cake and eat it too by lulling the borrower, with an oral promise of a trial modification agreement, into believing that the scheduled foreclosure has been stayed, but precluding enforcement of that agreement by foreclosing before the agreement can be signed and take effect.

Nonetheless, even without an enforceable written modification agreement, I deny defendants' summary judgment motion because while plaintiff did not plead a separate claim for breach of the implied covenant of good faith and fair dealing, that is the claim most appropriately

---

agreement to lend money to a natural person which is secured by residential property, there was no need for a writing and thus, no need for the modification to be in writing.

I reject plaintiff's argument because O.R.S. 41.580(1)(e) which is specifically directed to agreements for the sale of real property, governs. While at first glance subsection (1)(h) appears to apply to promissory notes secured by deeds of trust, the statute cannot be interpreted to allow an exception to a required writing for sales of real property under subsection 41.580(1)(h)(B) while simultaneously requiring a writing for sales of real property under subsection 41.580(1)(e). Because subsection (1)(h) can be more broadly applied, for example to a home equity line of credit, subsection (1)(e) applies here.

supported by the facts.

"[S]o long as it is not inconsistent with the express terms of a contract, the duty of good faith and fair dealing is a contractual term that is implied by law into every contract." Eggiman v. Mid–Century Ins. Co., 134 Or. App. 381, 386, 895 P.2d 333, 335 (1995) (internal quotation omitted); see also Best v. U.S. Nat'l Bank of Or., 303 Or. 557, 561, 739 P.2d 554, 557 (1987) (court has long recognized that there is an obligation of good faith in the performance and enforcement of every contract). The contractual good faith doctrine is designed to "effectuate the reasonable contractual expectations of the parties." Best, 303 Or. at 563, 739 P.2d at 558; see also Klamath Off–Project Water Users, Inc. v. Pacificorp, 237 Or. App. 434, 445, 240 P.3d 94, 101 (2010) (common law implied duty of good faith and fair dealing serves to effectuate the objectively reasonable expectations of the parties).

The purpose of the duty of good faith is to prohibit improper behavior in the performance and enforcement of contracts, and to ensure that the parties "will refrain from any act that would 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Iron Horse Eng'g Co. v. Nw. Rubber Extruders, Inc., 193 Or. App. 402, 421, 89 P.3d 1249, 1259 (2004) (quoting Perkins v. Standard Oil Co., 235 Or. 7, 16, 383 P.2d 107 (1963)). The duty "does not operate in a vacuum[;]" rather it "focuses on the agreed common purpose and the justified expectations of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract." Or. Univ. Sys. v. Or. Pub. Emp. Un, 185 Or. App. 506, 515–16, 60 P.3d 567, 572 (2002). The duty "cannot contradict an express contractual term, nor does it provide a remedy for an unpleasantly motivated act that is permitted expressly by the contract." Stevens v. Foren, 154 Or. App. 52, 58, 959 P.2d 1008, 1011 (1998).

Schmelzer v. Wells Fargo Home Mtg., No. 3:10-cv–1445–HZ, 2011 WL 5873058, at *7 (D. Or. Nov. 21, 2011).

The reasonable contractual expectations of the parties to the DOT were that as long as plaintiff made payments, Chase had no right to foreclose. With plaintiff in default, Chase had a reasonable expectation to foreclose. However, once Chase made plaintiff aware that plaintiff qualified for a trial modification of the payment obligations, Chase altered the reasonable expectations of the parties. At that point, as of August 24, 2009, plaintiff's reasonable

expectations, under the DOT, were that he had qualified for a temporary modification, or the opportunity to apply for one, his prompt processing of the loan modification paperwork could result in a long-term modified loan payment agreement, and during this processing, Chase would abstain from foreclosing.   Chase's actions in foreclosing on August 27, 2009 impeded plaintiff's ability to continue making payments on the property, which had been authorized by defendant in the August 24, 2009 phone conversation.   Chase's having agreed to the trial modification, or having agreed to consider a trial modification application, created an obligation on Chase to process the modification offer in good faith and to stay foreclosure while that modification application was pending.

    In Schmelzer, I concluded that the plaintiff could not base a breach of the implied duty of good faith and fair dealing claim on the bank's failure to offer the plaintiff a reasonable modification because to do so would be inconsistent with the express provision of the DOT which stated that the lender was not required to modify the payment schedule.  2011 WL 5873058, at *8.  In contrast, here, looking at the facts in the light most favorable to plaintiff, Chase either had an oral agreement to modify, or at least had made an offer to negotiate a modification.  Because, when viewing the facts in plaintiff's favor, Chase's actions on August 24, 2009 altered the reasonable expectations of the parties, Chase's foreclosure on August 27, 2009 violated the implied duty of good faith and fair dealing.  See also Hinshaw v. BAC Home Loans Serv., LP, No. 3:10-cv-1469-JO, 2012 WL 407026, at *6  (D. Or. Feb. 7, 2012) (denying the defendants' motion for summary judgment on a breach of the implied duty of good faith and fair dealing claim when the defendants failed to respond to the plaintiff's, or his attorney's, calls, failed to meet in person, and failed to make "any other effort to work with [the plaintiff] on a

solution despite having offered in writing to do so") (footnote omitted); Henin v. Bank of Am.

Home Loan Serv., No. 3:10-cv-1500-HA, 2011 WL 1667472, at *4 (D. Or. May 3, 2011)

(denying the defendants' motion to dismiss a breach of the implied duty of good faith and fair

dealing claim based on the plaintiff's allegation that an oral forbearance agreement modified the

lender's right of sale and required the lender to postpone the foreclosure sale until the plaintiff's

short sale process was completed, or alternatively, based on the plaintiff's allegations that the

lender induced the plaintiff to enter a forbearance agreement and forego a statutory right to cure

when the lender had no intention of actually postponing the sale).

Chase argues that I should not consider a breach of the implied duty of good faith and fair

dealing claim because it is not pleaded in the Complaint.  However, as noted above, and more

fully explained in the June 21, 2011 Opinion, Harper has been interpreted to recognize an

implied duty claim rather than a tortious wrongful foreclosure claim.  By bringing a tortious

wrongful foreclosure claim, the Complaint in this case fairly raises an implied duty claim under

Harper.  Additionally, there is no prejudice to Chase in allowing the claim because there is no

need for any additional discovery or motion practice as a result.

Construing the Complaint to raise a claim based on the implied duty of good faith and fair

dealing, I deny the summary judgment motion as to this claim.

III.  Damages

In his Complaint, plaintiff states that he has been damaged by the loss of his home and

possessions worth approximately $350,000.  Compl. at ¶¶ 22, 28.1.B.  Defendants move for

summary judgment on the requested damages on two separate grounds:  (1) plaintiff's claim for

$350,000 in economic damages misstates the measure of economic damages available for loss of

the foreclosed property because it ignores the fact that plaintiff owed roughly $200,000 on the property at the time of the foreclosure; and (2) plaintiff has no proof to support his claim that he lost approximately $74,000 in personal possessions as a result of the foreclosure.

A.  Measure of Damages for Loss of Property

The general principle of awarding damages in a contract claim, or a breach of the implied duty of good faith and fair dealing claim, is to place the injured party in the position the party would have been in absent the breach.  Pearson v. Provident Life and Acc. Ins. Co., No. CV-01–1202–AS, 2004 WL 6039152, at * 6 (D. Or. Mar. 17, 2004) (under Oregon law, damages to be awarded for breach of implied covenant of good faith and fair dealing are limited to breach of contract damages); Siler v. Turnbull, 71 Or. App. 787, 790, 693 P.2d 1323, 1325 (1985) (measure of damages in breach of contract claim is to put the person in the position he would have been in had the contract not been breached).

Here, the proper measure of damages is the value of the property at the time of the foreclosure less any of plaintiff's indebtedness remaining at that time.  This places the parties in the positions they would have been absent Chase's breach.  Although plaintiff pleaded that he was entitled to $350,000 in damages for the loss of his home and possessions, in his declaration in opposition to the motion for summary judgment he states that he believes the property was worth approximately $640,000 at the time of the foreclosure.  Pl.'s Decl. at ¶ 7.  He states that it included more than six acres, a pole barn and outbuildings, and approximately $150,000 in timber.  Id.

In reply, Chase notes that plaintiff's Complaint fails to mention anything about lost timber.  Compl. at ¶ 22 ("Plaintiff has been damaged by the loss of his home and possessions

worth approximately $350,000").  Regardless, Chase argues, plaintiff's damages should be limited to the difference in the value of the property minus plaintiff's indebtedness on the date of the foreclosure.  I agree with Chase.  I grant summary judgment to Chase on plaintiff's damages claim to the extent plaintiff seeks more than the value of the property less plaintiff's indebtedness as of the foreclosure sale date.

    B.  Personal Possessions

In the Complaint, plaintiff does not specify a separate amount of damages for alleged lost personal possessions.  Chase refers to $74,000 in lost personal possessions plaintiff apparently identified in response to an interrogatory.  Defs.' Mem. in Sup. of MSJ at p. 3.  Although no copy of the interrogatory response is provided in the record, plaintiff does not dispute the amount at issue.

In support of the motion, defendant relies on the Declaration of George Perkins who was hired by FNMA to act as a broker for the property after the foreclosure sale, photographs of the property taken by Perkins on October 9, 2009, and the Declaration of Regan West, owner of Regan West Clean-Up, a company Perkins hired to secure and clean-up the property.  Plaintiff objects to unspecified statements in Perkins's declaration as hearsay[5], but otherwise makes no argument, and submits no evidence, in support of his alleged personal property losses.

Putting aside any potential hearsay, the Perkins and West Declarations establish that (1) on August 31, 2009, someone was still on the property; (2) on October 8, 2009, Perkins found the property abandoned and trashed with no items of value inside the house, but with a

_____

    [5]  While plaintiff does identify five paragraphs "in particular" which contain allegedly inadmissible hearsay, plaintiff fails to cite to the specific statements he takes issue with.

dilapidated mobile home on the property; (3) also on October 8, 2009, West visited the property and found it abandoned; (4) West saw nothing to indicate that the house was under construction and saw nothing of value inside the house or the mobile home; (5) on October 9, 2009, Perkins took photographs of the property which confirm his description; (6) West inventoried the contents of the inside of the house and gathered items of personal property so they would not be stolen; (7) West kept these items until they were eventually inspected/claimed by Klaetsch, plaintiff's stepdaughter; (8) on October 21, 2009, Klaetsch was given access to the property and retrieved certain items in West's presence including a clock, some pictures, a blanket, and a few building materials including one door, some plywood, some paneling, and possibly one vinyl window; (9) Klaetsch inspected some harmonicas and a pinball machine but did not take them; (10) Perkins recommended to FNMA that it conduct a personal property eviction because the items at the property could possibly come to $500 in value; (11) the personal property eviction occurred on November 20, 2009; (12) all of the outbuildings were considered part of the real property and were factored into the property's appraised value at the time of the foreclosure sale as well as at the time the property was sold by FNMA to the subsequent purchaser; and (13) plaintiff's stepdaughter's husband (or possibly plaintiff's stepson) used an excavator to remove one of the outbuildings from the property. Perkins Decl. at ¶¶ 1, 6, 9, 11, 12, 13, 17; Ex. 1 to Perkins Decl; West Decl. at ¶¶ 4, 5, 6, 8, 10.

This evidence, none of which is hearsay, shows that no item of any significant value was inside the home when FNMA's agents Perkins and West found the property abandoned. Plaintiff provides no evidence in response except to state that at the time he left the property in September 2009, the house was being remodeled. Pl.'s Decl. at ¶ 6. This is not sufficient to create an issue

of fact regarding his claim that in the process of the foreclosure, defendants destroyed or disposed of certain personal possessions worth $74,000. I grant summary judgment to defendants on plaintiff's damages claim based on lost personal property.

## CONCLUSION

Defendants' motion for summary judgment [41] is granted except as to a claim based on the breach of the implied duty of good faith and fair dealing.

IT IS SO ORDERED.

Dated this ___17th____ day of ___April_____, 2012

_/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

23 - OPINION & ORDER